**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4368-15T1
A-4958-15T1

O.S.,

     Petitioner-Appellant,

v.

DEPARTMENT OF HUMAN SERVICES,
DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES, and CUMBERLAND
COUNTY BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Argued August 29, 2018 – Decided September 24, 2018

Before Judges Alvarez and Gooden Brown.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services, Agency Docket No. 0670455946; and Division of Family Development, Agency Docket No. C121012.

O.S., appellant, argued the cause pro se (in A-4368-15 and A-4958-15).

Lauren S. Kirk, Deputy Attorney General, argued the cause for respondents (in A-4368-15 and A-4958-15) (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Lauren S. Kirk, on the brief).

PER CURIAM

In these consolidated appeals, O.S. appeals from two separate final agency decisions of the Department of Human Services (DHS). She appeals from the June 6, 2016 decision of the Division of Medical Assistance and Health Services (DMAHS), adopting the Administrative Law Judge's (ALJ) initial decision terminating her Medicaid benefits as of December 31, 2015, because O.S. had not been a permanent resident for a period of five years. She also appeals from the June 15, 2016 decision of the Division of Family Development (DFD), adopting the ALJ's initial decision. The ALJ affirmed the Cumberland County Board of Social Services' (Board) determination denying O.S. Work First New Jersey/General Assistance (WFNJ/GA) benefits and Supplemental Nutrition Assistance Program benefits (SNAP), formerly known as food stamps, because O.S. was no longer facing the threat of domestic violence, and did not meet the requisite criteria to continue receiving benefits. We affirm.

The facts are undisputed. O.S., born July 1982, came to the United States from Russia on a fiancé visa. Her immigration status as of May 25, 2011, when

she entered the United States, was that of a "lawful permanent resident" with "employment authorized." She eventually married and divorced her fiancé, a naturalized United States citizen, who subjected her to domestic violence. O.S. applied for and was awarded GA, SNAP and Medicaid benefits. Although GA, SNAP and Medicaid program eligibility rules required five years continuous residency in the United States for lawful permanent residents, O.S. requested, and initially received a domestic violence waiver.

However, on November 24, 2015, during a domestic violence risk assessment evaluation, O.S. indicated that she had not "experienced domestic violence" "[w]ithin the last [six] months[,]" that her batterer did not "live in New Jersey[,]" and that she could "safely move around in the community[.]" Based upon this evaluation, it was determined that O.S. had no current domestic violence-related safety issues. Therefore, on December 1, 2015, her GA and SNAP benefits were terminated, and on December 16, 2015, her Medicaid benefits were terminated because she did not meet the five-year residency requirement.

O.S. appealed the determinations and the matters were transferred to the Office of Administrative Law for hearings as contested cases. N.J.S.A. 52:14B-1 to -15, 14F-1 to -13. During separate hearings, the same ALJ heard testimony

from O.S. as well as the respective agency representatives. On May 5, 2016, the ALJ issued an initial decision affirming the termination of O.S.'s Medicaid benefits. Acknowledging that O.S. had been "hospitalized with mental health problems and had hip surgery in the past[,]" the ALJ concluded that O.S. was not a lawful permanent resident for five years as of December 16, 2015, and was therefore ineligible for Medicaid pursuant to 45 C.F.R. § 435.406(a)(2)(ii) and N.J.A.C. 10:69-3.9(c)(1). On June 6, 2016, the Director of DMAHS adopted the ALJ's decision, noting that "as of May 25, 2016, [O.S.] satisfied the five-year residency requirement and may now be eligible for benefits[,]" and suggested that O.S. "submit an application."

On June 3, 2016, the ALJ issued an initial decision affirming the termination of O.S.'s GA and SNAP benefits. The ALJ concluded that O.S. was ineligible for GA and SNAP benefits pursuant to N.J.A.C. 10:90-2.10(b)(2)(i) and N.J.A.C. 10:87-3.8(f)(6), respectively, because O.S. was not a lawful permanent resident for five years as of December 1, 2015, and her domestic violence waiver had expired. The ALJ explained:

> [O.S.] was documented as entering the United States on May 25, 2011 . . . . She was granted GA and SNAP under a domestic violence waiver program. The waiver does not result in an indefinite award of GA and SNAP. It is reviewed periodically to confirm that it [is] indispensable to petitioner's needs and safety as a

victim of domestic violence . . . . [O.S.] is no longer facing the threat of domestic violence . . . . She has not seen or heard from the assailant in many years. She has no children and is now living with friends.

On June 15, 2016, the Director of DFD adopted the ALJ's decision. These appeals followed.

On appeal, O.S. renews her argument that she was entitled to a domestic violence waiver of the five-year residency requirement because she was battered by her then husband, and asserts that the respective agencies disregarded the laws. We disagree.

Our "'review of an agency's determination is limited in scope.'" K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)). "In administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008). We are thus bound to uphold the administrative agency decision "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).

5

In fact, "[w]here [an] action of an administrative agency is challenged, a presumption of reasonableness attaches to the action . . . and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious." Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987) (citations omitted). "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006); see also Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 138 (App. Div. 2005) (indicating that we give "considerable weight" to the interpretation and application of regulations by agency personnel within the specialized concern of the agency). "On the other hand, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

"Medicaid was created by Congress in 1965 to provide medical services to families and individuals who would otherwise not be able to afford necessary

6

care." S. Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J. Super. 262, 274 (App. Div. 2002) (citation omitted). "The Medicaid program is fairly characterized as a 'cooperative federal-state endeavor' where, in return for federal monies, states must comply with federal requirements." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 342 (App. Div. 2009) (quoting L.M. v. State, Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995)). Among those requirements are Medicaid's compliance with federal immigration law, U.S.C. § 1101(a)(13)(C), and the federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA).[1] K.K., 453 N.J. Super. at 161.

The Federal Medicaid Act was amended to comply with PRWORA, which "was enacted by Congress to continue the federal immigration policy of promoting self-sufficiency and self-reliance of immigrants to reduce the burden on public benefits such as Medicaid." Ibid. (citing 8 U.S.C. § 1601). To that end, PRWORA imposed several limitations on the availability of public benefits to aliens, including barring a lawful permanent resident entering the United States after August 22, 1996 from receiving federal, means-tested public benefits for at least five years after the date of entry. 8 U.S.C. § 1613(a).

---

[1] PRWORA, Pub. L. No. 104-104, 110 Stat. 56, is codified as amendments to various sections, including 42 U.S.C., 7 U.S.C., and 8 U.S.C.

PRWORA also authorized states to deny state public benefits on that basis. 8 U.S.C. § 1622(a).

In order to comply with PRWORA, our legislature amended the statutory definition of "'[q]ualified applicant[,]'" N.J.S.A. 30:4D-3(i), and "'[e]ligible alien[,]'" N.J.S.A. 30:4D-3(q), contained in the New Jersey Medical Assistance and Health Services Act (the Act), N.J.S.A. 30:4D-1 to -19.5, our State Medicaid Act administered by DMAHS. See In re A.N., 430 N.J. Super 235, 243 (App. Div. 2013). In turn, DMAHS promulgated regulations providing Medicaid benefits only to those qualified aliens who had resided in the United States for at least five years. Guaman v. Velez, 421 N.J. Super. 239, 252-53 (App. Div. 2011); N.J.A.C. 10:72-3.2(e).

Aliens who are battered by a spouse may be deemed "qualified aliens" under certain circumstances "but only if (in the opinion of the agency providing such benefits) there is a substantial connection between such battery or cruelty and the need for the benefits to be provided[,]" and the alien "has been approved or has a petition pending" with the United States Citizenship and Immigration Services. 8 U.S.C. § 1641(c)(1)(A) to (B). Further, under N.J.A.C. 10:72-3.2, lawful permanent residents "who are victims of domestic violence" are entitled to Medicaid benefits "but only after the alien has been present in the United

States for five years" if "there is a substantial connection between the battery or cruelty suffered by [the] alien and his or her need for Medicaid benefits[.]" N.J.A.C. 10:72-3.2(b)(12), (c)(12). "The county welfare agency shall . . . determin[e] whether a substantial connection exists between the battery or cruelty and the need for Medicaid . . . in accordance with 8 U.S.C. § 1641." N.J.A.C. 10:72-3.2(b)(12)(vi).

Similarly, in compliance with PRWORA, the WFNJ Act, providing temporary cash assistance to applicants, was designed to "serve the primary goal of fostering self-sufficiency." N.J.S.A. 44:10-59(b). Under the WFNJ program, established in the DHS, N.J.S.A. 44:10-58(a), and administered at the municipal and county levels, N.J.S.A. 44:10-59(c), like Medicaid, lawful permanent residents are not eligible for WFNJ/GA and SNAP benefits "until five years after entry into the United States." N.J.A.C. 10:90-2.10(b)(2)(i), 10:87-3.8(f)(6), respectively; see also 45 C.F.R. § 260.50. However, in accordance with the DHS Commissioner's authority to waive program requirements, N.J.S.A. 44:10-59(d), "victims of domestic violence" are eligible for benefits "regardless of their date of entry into the United States," subject to the county agency's determination "whether a substantial connection exists between battery or cruelty suffered and an individual's need for benefits . . . ." N.J.A.C. 10:90-

2.10(b)(3); see also 45 C.F.R. § 260.55. The domestic violence waiver is based upon the request of the recipient submitted via an affidavit. N.J.A.C. 10:90-2.6(a).

Here, we are satisfied that O.S. has failed to make the requisite showing that the agency did not follow the law or made a decision that was arbitrary, capricious, unreasonable, or unsupported by substantial evidence to warrant our intervention. When O.S. applied for public benefits, she had not resided in the United States for five years, and was thus ineligible. Moreover, in the absence of a substantial connection between domestic violence and O.S.'s need for benefits, O.S. is no longer qualified for a domestic violence waiver.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-4368-15T1